IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MICHAEL ALAN STACY                                                        PLAINTIFF

v.                              No: 4:17-cv-00235 JLH-PSH

TIM RYALS                                                                  DEFENDANT

**PROPOSED FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following Proposed Findings and Recommendation have been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

**I. Introduction**

Plaintiff Michael Alan Stacy and Jonathan Porter filed this *pro se* civil rights complaint against Sheriff Tim Ryals in his official capacity while incarcerated at the Faulkner County Detention Center ("FCDC"). Doc. No. 2. Stacy and Porter alleged that they had been denied adequate recreational opportunities while incarcerated at the FCDC. *Id.* Porter and Stacy did not specify what type of relief they sought. *Id.* at 5. Porter's lawsuit was subsequently dismissed for failure to prosecute. *See Porter v. Rice, et al.*, No. 4:17-cv-00236.

Before the Court are Defendant Ryals' motion for summary judgment, supporting brief, and statement of undisputed facts (Doc. Nos. 39-41) as well as Stacy's response (Doc. No. 43) and Ryals' reply (Doc. No. 44). The pleadings and exhibits in the record establish that the material facts are not in dispute and Ryals is entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City*

*of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts

The facts listed below are taken from those submitted by Defendant Ryals that are supported by the following documents:  an affidavit by Chris Reidmueller, jail administrator at the FCDC, along with "tower pass down" logs covering the time period in question and a copy of the FCDC's exercise policy (Doc. No. 41-1); and an affidavit by Gary Andrews, a Lieutenant at the FCDC (Doc. No. 44-1). The Court also includes those facts submitted by Stacy in his response that are supported by documents of record.  Disputed facts are noted.

Stacy was an inmate in the FCDC during the time period (March 26 through April 11, 2017) that he alleged he was denied regular exercise outside his cell.  According to Reidmueller, Stacy was housed in two cells during that period: cell 212 and the Large Holding Cell (number 200).  *See* Doc. No. 41-1 at 2.  Stacy maintains he was housed in the Large Holding Cell and not in cell 212.  *See* Doc. No. 43.  The tower pass down logs show that Stacy was in fact housed in the Large Holding Cell during the majority (if not all) of the time period in question.  *See* Doc. No. 41-1 at 14, 36, 41, 45-46, 63, 90 & 95.  There is one notation that indicates Stacy may have been housed in or moved to cell 212 on March 30, 2017.  *See id.* at 29 ("15:00 Stacy from Large Holding Cell 212).  Stacy also maintains he was held in cell 200 until sometime in May for a total of about 60 days.  *See* Doc. No. 43 at 3-5.  Stacy filed a copy of a grievance dated May 8, 2017, stating he had not had recreation call in cell 200 for more than five days.  *See id.* at 13.

It is undisputed that Stacy was afforded time on the outside recreation yard on four occasions during the 17-day period described in Stacy's complaint.  *See* Doc. No. 2 at 4; Doc. No.

3

41 at 1. A recreation period on the yard was canceled on another occasion due to bad weather according to the tower pass down logs, but Stacy maintains it was nice that day. Doc. No. 41-1 at 1-2 & 44.

According to Riedmueller, inmates at the FCDC are permitted to and frequently do exercise in their cells. Doc. No. 41-1 at 2. Riedmueller also notes that outside recreation is sometimes not an option based on the weather and for other reasons. *Id.* Riedmueller opines that both cell 212 and the Large Holding Cell are large enough to do any number of exercises, such as jumping jacks, pushups, and sit-ups. *Id.* Cell 212 is comprised of several "bedroom" pods around a central dayroom area (where the cell's inmates spend most of their day), which is large enough for the inmates to walk laps. *Id.* The Large Holding Cell is one large room with bunks on the wall which is large enough for stationary exercises according to Riedmueller. *Id.* The Large Holding Cell measures 18 feet by 7 feet. Doc. No. 44-1 at 1. Stacy states that the Large Holding Cell is not large enough for exercise of any kind, with barely enough room for three inmates to sleep (with two on beds and one on the floor). Doc. No. 43 at 1.

During the period cited in Stacy's Complaint, Faulkner County had a policy in place governing exercise and recreation opportunities for inmates at the FCDC. Doc. No. 41-1 at 1 & 97. The policy provides that "[d]etainees shall have the opportunity to engage in active, out of cell exercise, for one hour per day five days per week." *Id.* The exercise area is designated as "[a] room or any indoor or outdoor area set-aside [sic] for exercises." *Id.* The policy further provides that detainees may use exercise areas for one hour daily, beginning on their second consecutive day of detention, and that outdoor recreation areas will be used when weather, light conditions, and security allow. *Id.*

**IV. Analysis**

Stacy's complaint alleged:

I, Jonathan Porter, and Another Inmates Celly has asked for yard call everyday since March the 26th to April the 11th 2017 and have only gotten Reck call 4 times. Its a Federal law that inmates gets 1 hour a day out of our cell to A inside Reck or outside yard call. Everyone else upstairs gets reck. We are in A old Alcohol holding tank. by booking . . Jonathan Porter has been in here for 3 days and He's Been asking for reck also. We get no reckeration, no exercise, which puts our health at risk quicker.

Doc. No. 2 at 4.

Depriving an inmate of adequate exercise may constitute a constitutional violation. *See e.g., Campbell v. Cauthron*, 623 F.2d 503 (8th Cir. 1980) (holding that an inmate confined to a cell more than sixteen hours a day must ordinarily be allowed to exercise for a least one hour per day outside the cell). Because Stacy is a pretrial detainee, his claims are evaluated by the due process standard of the Fifth and Fourteenth Amendments which prohibits the punishment of persons prior to a judgment of conviction. *See Campbell v. Cauthron,* 623 F.2d at 505 (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). However, because "pretrial detainees 'retain at least those constitutional rights that are enjoyed by convicted prisoners'", their conditions of confinement should also not constitute cruel and unusual punishment under the Eighth Amendment. *Id.* (quoting *Bell v. Wolfish*). To prevail on an Eighth Amendment claim, a plaintiff must prove the existence of objectively harsh conditions of confinement, together with a subjectively culpable state of mind by prison officials in condoning or creating the conditions. *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993). "When applying this two-part test to a prisoner's challenge to physical exercise restrictions, the fact finder may consider: (a) the opportunity to be out of the cell; (b) the availability of recreation within the cell; (c) the size of the cell; (d) the duration of confinement; and (e) the extent of any physical injury." *Ganahl v. Staley*, No. 4:16-cv-00015 BRW/JTR, 2017

WL 5505010, at *4 (E.D. Ark. Nov. 16, 2017), *report and recommendation adopted*, 2017 WL 6045429 (E.D. Ark. Dec. 6, 2017) (citing *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)).

Ryals argues he should be awarded summary judgment because Stacy sues Ryals in his official capacity only and has provided no proof of any unconstitutional county policy or custom, no proof of any underlying violation of his rights, and no proof that an unconstitutional county policy or custom was the "moving force" behind an underlying violation of his rights. The Court need not determine whether a constitutional violation occurred in this case because Ryals is correct that Stacy has not alleged sufficient facts to state an official capacity claim against Ryals.

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). The Eighth Circuit Court of Appeals has described the standard for stating a claim for municipal liability in a § 1983 case as follows:

> Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), (2) an unofficial "custom," id.; or (3) a deliberately indifferent failure to train or supervise, see City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Policy and custom are not the same thing. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that

plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." Snider v. City of Cape Girardeau, 752 F.3d 1149, 1160 (8th Cir. 2014).

*Corwin v. City of Indep., MO.*, 829 F.3d 695, 699–700 (8th Cir. 2016). Thus, Stacy must show that any constitutional violation he may have suffered occurred due to an official county policy or an unofficial county custom.

Stacy makes no allegation that Ryals' failure to train subordinates resulted in his lack of out of cell exercise. Further, Stacy does not challenge the constitutionality of the FCDC's official exercise policy.[1] Stacy simply alleges that he was allowed out of his cell only four times between March 26, 2017, and April 11, 2017, for recreation. Doc. No. 2 at 4. Additionally, Stacy does not assert that Ryals, as an official policy maker,[2] personally took any action that caused him to be deprived of exercise. Accordingly, because Stacy has not stated a claim that FCDC's official policy is unconstitutional, he must show that he was denied an adequate opportunity to exercise due to an unofficial county custom.

Applying the standard set forth in *Corwin v. City of Indep., MO*, *supra*, Stacy has not established that an unofficial custom caused his lack of exercise. First, Stacy does not allege or provide evidence that he was denied exercise due to "a continuing, widespread, persistent pattern

---

[1] The FCDC exercise policy allows detainees "to engage in active, out of cell exercise, for one hour per day five days per week" either indoor or outdoor. *See* Doc. No. 41-1 at 97. Such a policy meets constitutional standards. *See e.g.*, *Campbell v. Cauthron, supra*. Although it appears this policy was not followed because Stacy did not receive recreation out of his cell five days per week, the violation of prison policy alone does not support a constitutional claim. *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (holding that "there is no § 1983 liability for violating prison policy.").

[2] Unconstitutional acts by official policy makers may constitute official county policy. *See Tilson v. Forrest City Police Dept.,* 28 F.3d 809, 814 (8th Cir. 1994) ("[m]unicipal officials who have final policymaking authority may subject not only themselves, but also the government, to liability under § 1983."). A sheriff is likely an official policy-maker. *See Henry v. Roberson*, No. 4:11CV00449 JLH, 2012 WL 682738, at *7 (E.D. Ark. Mar. 2, 2012) ("There is good reason to think that the sheriff is a final policymaking authority with respect to an Arkansas county's sheriff's department.").

of unconstitutional misconduct." 829 F.3d at 700. It is undisputed that Stacy received only four opportunities to exercise outside his cell over a period of at least 17 days. That is insufficient to establish a continuing, widespread, persistent pattern of unconstitutional conduct. Second, Stacy must also demonstrate that policymaking officials were deliberately indifferent to or tacitly authorized unconstitutional conduct after receiving notice of such misconduct. *Id.* Stacy does not allege or present any proof that Ryals was notified that he was not receiving regular opportunities to exercise outside his cell. Stacy submitted several grievances he filed regarding his lack of recreation time but those were not responded to by Ryals. *See* Doc. No. 43 at 11-13. Accordingly, there is no evidence Ryals was aware of and deliberately indifferent to Stacy's lack of recreational opportunities. Finally, to establish an unofficial custom, Stacy would have to also show that he was injured as a result of the alleged unofficial custom. Stacy does not allege any injury to his health resulting from his claimed inability to exercise other than the lack of exercise might put his health at risk.

In sum, Stacy has not made sufficient allegations or presented sufficient evidence to establish a genuine issue of material fact regarding whether there was a widespread custom or practice of unconstitutional misconduct, known to and unaddressed by policymaking officials, that caused him injury. Accordingly, Ryals is entitled to summary judgment on Stacy's official capacity claim.

### IV. Conclusion

Because Stacy failed to allege sufficient facts to establish municipal liability, Ryals' motion for summary judgment (Doc. No. 39) should be granted, and Stacy's claim against Ryals should be dismissed with prejudice.

8

IT IS SO RECOMMENDED this 18th day of June, 2018.

_____
UNITED STATES MAGISTRATE JUDGE